NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:

                                                  Chapter 13

TERESA VANESSA MORTON,

a/k/a Teresa Vanessa Morton-Bailey,

                                                  Case No. 24-35311 (KYP)

        Debtor.
-------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER (I) DENYING DEBTOR'S REQUEST TO DISALLOW U.S. BANK'S PROOF OF CLAIM UNDER THE FORECLOSURE ABUSE PREVENTION ACT, (II) DENYING DEBTOR'S REQUEST TO AVOID CERTAIN LIENS ON REAL PROPERTY, AND (III) GRANTING IN PART THE DEBTOR'S REQUEST TO DISALLOW PORTION OF U.S. BANK'S PROOF OF CLAIM SEEKING PAYMENT OF ATTORNEYS' FEES**

**APPEARANCES:**

TERESA VANESSA MORTON
*Pro Se Debtor*
2849 Route 44-55
Gardiner, NY 12525

ROACH & LIN, P.C.
*Counsel to U.S. Bank, as Trustee*
6851 Jericho Turnpike
Suite 185
Syosset, NY 11791
      By:     Jacqueline Kelly, Esq.
                Of Counsel


**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

**INTRODUCTION**

Through a series of submissions,[1] *pro se* debtor Teresa V. Morton ("Debtor") seeks (i) disallowance of the $308,640.90 proof of claim ("POC")[2] filed by her mortgage lender U.S. Bank National Association, not in its individual capacity but solely as trustee of NRZ Inventory Trust ("U.S. Bank"), on the basis that its efforts to seek repayment are time-barred under New York's Foreclosure Abuse Prevention Act ("FAPA"), (ii) avoidance of certain liens on her real property located at 2849 Route 44-55, Gardiner, New York ("Property"), and (iii) disallowance of the portion of the POC seeking payment of U.S. Bank's attorneys' fees.  U.S. Bank objects to the relief requested by the Debtor.[3]

For the reasons stated, the Debtor's request to disallow the portion of the POC seeking payment of U.S. Bank's attorneys' fees is GRANTED to the extent of reducing the amount of the POC by $12,601.49.  The remainder of the Debtor's requests is DENIED.

**JURISDICTION**

This Court has jurisdiction over the Debtor's requests pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31,

---

[1]    *See* Debtor Submission docketed on June 22, 2025 ("June 22 Submission") (ECF Doc. # 117-1); Debtor Submission docketed on September 2, 2025 ("September 2 Submission") (ECF Doc. # 139); Debtor Submission docketed on September 19, 2025 ("September 19 Submission") (ECF Doc. # 144); and Debtor Submission docketed on September 24, 2025 ("September 24 Submission") (ECF Doc. # 157). "ECF Doc. # _" refers to documents filed on the electronic docket of this bankruptcy case.  "ECF p. _" refers to the page number imprinted across the top of the page by the Court's electronic filing system. References to documents filed on the docket of other cases will include the case number or case name.

[2]    *See* Claim # 6-1.

[3]    *See [U.S. Bank's] Objection to Debtor's Motion to Reduce Attorney Fees*, dated July 15, 2025 (ECF Doc. # 127), and *[U.S. Bank's] Objection to Debtor's Motion to Avoid Lien*, dated Sept. 16, 2025 (ECF Doc. # 142).

2

2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York. These matters are core proceedings under 28 U.S.C. § 157(b)(2)(B) and (K).

## BACKGROUND[4]

**A.     The Foreclosure Action and Prior Bankruptcy Filings**

On April 6, 2004, the Debtor and co-obligor Kenneth A. Bailey, Jr. (together, the "Co-Obligors") executed an adjustable-rate note ("Note") evidencing a debt of $277,200.00 to Argent Mortgage Company, LLC ("Argent") for the purchase of the Property. The Co-Obligors also executed a mortgage ("Mortgage") granting Argent a lien over the Property. The Mortgage was subsequently assigned to U.S. Bank on March 7, 2024.[5]

The Co-Obligors defaulted on the Mortgage around December 2015,[6] and, on November 9, 2016, U.S. Bank commenced a foreclosure action against the Co-Obligors and others in the Supreme Court of the State of New York, Ulster County ("State Court"), captioned *U.S. Bank, N.A. v. Kenneth A. Bailey, Jr., et al.*, Index No. EF2016-2984 ("Foreclosure Action").

---

[4]     This section includes references to judicial documents and court records filed on dockets of other cases. This Court may take judicial notice of such documents and records. *In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014); *accord In re Mehl*, 660 B.R 353, 359 (Bankr. S.D.N.Y. 2024); *see* FED. R. EVID. 201.

[5]     Documents evidencing the Note, Mortgage and assignment of the Mortgage to U.S. Bank are appended to the POC. Prior to the assignment to U.S. Bank, the Mortgage was assigned to other "U.S. Bank" affiliated entities on July 22, 2016, December 2, 2021, and March 3, 2023. (*See* documents appended to POC.)

[6]     *See Declaration of Marilyn Solivan*, signed on Nov. 26, 2018 ¶ 11 (ECF Case No. 18-36707 Doc. # 16-1 at ECF p. 41).

3

While the Foreclosure Action lay dormant, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. *See In re Teresa Vanessa Morton-Bailey*, Case No. 18-36707 (CGM). A predecessor of U.S. Bank moved for relief from the automatic stay, and the Court granted that motion over the Debtor's objection. (*See Order Pursuant to 11 U.S.C. § 362(d) Modifying the Automatic Stay Imposed by 11 U.S.C. § 362(a)*, dated Feb. 1, 2019 (ECF Case No. 18-36707 Doc. # 32).) On March 22, 2019, the Court granted the Debtor a discharge under 11 U.S.C. § 727 ("Chapter 7 Discharge") and closed the case. (*Discharge of Debtor and Order of Final Decree*, dated Mar. 22, 2019 (ECF Case No. 18-36707 Doc. # 37).)

The Debtor filed a second bankruptcy petition on September 28, 2020, this time under Chapter 13 of the Bankruptcy Code. *See In re Teresa Vanessa Morton-Bailey*, Case No. 20-36004 (CGM). The Chapter 13 Trustee ("Trustee") moved to dismiss the case, and the Court granted the motion under 11 U.S.C. § 1307(c) based on the Debtor's failure to make Chapter 13 plan payments and provide the Trustee with tax documents. (*See Order Dismissing Case*, dated Feb. 12, 2021 (ECF Case No. 20-36004 Doc. # 35).)

Following dismissal of the Debtor's second bankruptcy, a predecessor to U.S. Bank moved in the Foreclosure Action to confirm the referee's report and for entry of a foreclosure judgment. (ECF Foreclosure Action Doc. ## 3-35.) On January 12, 2023, the State Court granted the motion and entered an *Order Confirming Referee Report and Judgment of Foreclosure and Sale* ("Foreclosure Judgment") (ECF Foreclosure Action Doc. # 51). The State Court found that $297,818.58 was due under the Note. (Foreclosure Judgment at 2, 7.) It awarded the plaintiff attorneys' fees of $4,900 and costs of $8,391.44. (*Id.* at 7.) The State Court ordered the referee to sell the Property at

4

public auction within 90 days of the Foreclosure Judgment or as soon as possible thereafter. (*Id*. at 3-4.)

On February 7, 2023, the Debtor filed a notice of appeal from the Foreclosure Judgment. (ECF Foreclosure Action Doc. # 55.) The Debtor also moved for a stay pending appeal, and the State Court granted her a stay by *Decision & Order*, dated March 29, 2023 (ECF Foreclosure Action Doc. # 70).

**B.     The Instant Bankruptcy Case and Debtor's Contentions**

On March 29, 2024, the Debtor commenced the instant bankruptcy case by filing a petition under Chapter 13 of the Bankruptcy Code. (ECF Doc. # 1.) U.S. Bank timely filed its POC on June 7, 2024 asserting that it is owed $308,640.90. (POC, Part 2.) Included in this amount were "[f]ees, costs due" of $25,892.93. (*See* attachment to POC.)

In the early part of the case, the Debtor requested loss mitigation[7] with U.S. Bank, U.S. Bank did not oppose loss mitigation, and the Court granted the Debtor's request by order dated November 22, 2024. (ECF Doc. # 68.) Loss mitigation did not result in a loan modification or other agreement between the Debtor and U.S. Bank, and the Court terminated loss mitigation on June 26, 2025. (ECF Doc. # 124.)

Between June and September 2025, the Debtor made a series of submissions objecting to, among other things, U.S. Bank's POC, and U.S. Bank filed responses. (*See supra* notes 1 and 3.) The Debtor makes three arguments. First, U.S. Bank's efforts to collect on the Note and Mortgage are time-barred under FAPA. (*See* September 2

---

[7]     Loss mitigation is a court-supervised mediation program available to individual debtors in this Court whose residential real property is at risk of loss to foreclosure. *See* Bankr. S.D.N.Y. R. 9019-2.

5

Submission, September 19 Submission, September 24 Submission.)  Second, the non-Mortgage liens on the Property were canceled by operation of the Chapter 7 Discharge.  (*See* September 2 Submission and September 19 Submission.)  Third, the portion of the POC seeking payment of U.S. Bank's attorneys' fees should be disallowed.  (*See* June 22 Submission.)[8]

The Court held hearings on the Debtor's submissions on September 23 and November 4, 2025.  At the latter hearing, the Court stated that it would issue a written decision resolving the Debtor's requests.

## **DISCUSSION**

Under section 502(a) of the Bankruptcy Code, a proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  A properly filed proof of claim is "prima facie evidence of the claim's validity and amount." FED. R. BANKR. P. 3001(f).  "The burden then shifts to the claimant if the objector produces evidence equal in force to the prima facie case which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Creamer v. Motors Liquidation Co. GUC Tr.* (*In re Motors Liquidation Co.*), No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (citation, internal quotation marks, and alteration omitted).  "When the burden is shifted back to the claimant, it must then prove by a preponderance of the evidence that under applicable law the claim should be

---

[8]     The Debtor made two other requests in her submissions.  First, the Debtor sought to retain her 2024 tax refund to pay for repairs on the Property caused by flooding in the basement.  (*See* June 22 Submission.)  The Trustee advised the Court at a hearing that he is discussing the request with the Debtor.  Second, the Debtor sought voluntary dismissal of this bankruptcy case because, according to the Debtor, U.S. Bank's efforts to collect on the Note and Mortgage are time-barred.  (*See* September 2 Submission.)  The Debtor withdrew her request for dismissal at a hearing after the Court explained that it had not ruled on the statute of limitations issue.

6

allowed." *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon Co., L.P. v. Oneida Ltd.*, No. 09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010).

In the sections that follow, the Court will address the Debtor's three contentions made in her submissions.

**A.    Statute of Limitations**

In the main, the Debtor argues that U.S. Bank's POC must be disallowed because its efforts to collect on the Note and Mortgage are time-barred. The Debtor states that she defaulted on the Mortgage in December 2015, and the servicer on the Mortgage sent a letter to the Debtor in March 2016 accelerating the debt by seeking immediate repayment of the outstanding amount owed under the Note. (*See* September 19 Submission and September 24 Submission.) According to the Debtor, the applicable six-year statute of limitations began to run upon service of the acceleration letter, the six-year period ended in March 2022, and therefore, U.S. Bank is now time-barred from seeking repayment. (*Id.*)

The Debtor's argument lacks merit. Pursuant to section 213 of the New York Civil Practice Law and Rules ("C.P.L.R."), "an action upon a . . . note, the payment of which is secured by a mortgage upon real property, or upon a . . . note and mortgage so secured, or upon a mortgage of real property" must be commenced within six years. C.P.L.R. § 213(4); *see also GMAT Legal Title Tr. v. Kator*, 213 A.D.3d 915, 916 (N.Y. App. Div. 2023). "[O]nce a mortgage debt is accelerated, the entire amount is due and payable, and the statute of limitations begins to run on the entire debt." *GMAT Legal Title Tr.*, 213 A.D.3d at 916 (citations omitted).

7

Assuming that the Debtor received a letter accelerating the amounts owed under the Note in March 2016, U.S. Bank timely acted to collect on the Note and Mortgage by commencing the Foreclosure Action in November 2016. C.P.L.R. § 213 requires that an action "be *commenced* within six years" (emphasis added), not that such action be *completed* within six years. *See, e.g.*, *B&B Cap., LLC v. Pezone*, 241 A.D.3d 614, 615 (N.Y. App. Div. 2025) ("[T]he defendant's submissions in support of his motion established that the mortgage debt was accelerated in May 2021 . . . . Since this action was commenced in January 2023, less than six years later, it was timely.").

The Debtor's citation to FAPA does not change the result. As explained by the New York Court of Appeals in *Article 13 LLC v. Ponce de Leon Fed. Bank*, Case No. 96, 2025 WL 3272351 (N.Y. Nov. 25, 2025), FAPA was enacted to overturn the appeals court's earlier ruling in *Freedom Mortg. Corp. v. Engel*, 169 N.E.3d 912 (N.Y. 2021). *Article 13 LLC*, 2025 WL 3272351 at *3. The 2007 mortgage crisis resulted in an unprecedented spike in mortgage foreclosure actions being commenced. *Id.* at *2. Many of these actions were never prosecuted leaving defendant-homeowners in "judicial limbo." *Id.* Plaintiff-lenders often responded to the problem of these zombie cases "by filing successive foreclosure actions and arguing that prior actions were 'null' on the basis that the party who brought the initial action (often, the lenders themselves or their predecessors) did not hold the note or mortgage (or could not prove as much) at the time the foreclosure action was filed." *Id.* (citation omitted). These actions led to a body of caselaw concerning the statute of limitations in foreclosure cases, and in *Engel*, the New York Court of Appeals ruled that a lender's voluntary dismissal of a foreclosure action revoked a prior acceleration of the debt. *Id.* at *3 (citing *Engel*). The practical result of the *Engel* decision was that a mortgage lender, after its voluntary dismissal of a

8

foreclosure action, could re-accelerate the loan thus starting a new six-year limitations period.  *Id.* (citing *Engel*).

Concerned that the *Engel* decision would result in a flood of motions by lenders to re-open cases that were dismissed on statute of limitations grounds, the New York legislature acted swiftly to enact FAPA.  *Id.* ("Legislators who introduced FAPA expressed concern that *Engel* would lead to an overburdening of the judicial system and uncertainty on the part of innumerable homeowners currently trapped in an undue state of judicial purgatory.") (citation and internal quotation marks omitted).  Among other things, FAPA amended existing law to (i) provide that a discontinuance alone is not sufficient to revoke acceleration (*see* C.P.L.R. § 203(h) and C.P.L.R. § 3217(e));
(ii) create a "saving statute" specific to mortgage foreclosures that is more restrictive than similar statutes for other types of actions (*see* C.P.L.R. § 205-a); and (iii) add procedural rules to estop lenders, in certain circumstances, from asserting that a mortgage loan's maturity date had not previously been accelerated (*see* C.P.L.R.
§ 213(4)(a) and (b)).

The enactment of FAPA has no effect on the circumstances here.  U.S. Bank did not discontinue a prior action, or otherwise seek to decelerate the Note, before commencing the Foreclosure Action.  U.S. Bank timely commenced the Foreclosure Action well within the six-year period set forth in C.P.L.R. § 213(4) and obtained the entry of the Foreclosure Judgment.

B.    **Non-Mortgage Liens on the Property**

The Debtor also requests that liens on the Property held by various entities other than U.S. Bank be removed because they were canceled by operation of the Chapter 7 Discharge she received in her prior bankruptcy.  Specifically, the Debtor lists LVNV

9

Funding, New York State Insurance Fund, FIA Card Service, Calvary SPV, Capital One, and the IRS as entities with invalid liens over the Property. (*See* September 19 Submission.)[9]

The Debtor's argument lacks merit. "A Chapter 7 bankruptcy discharge does not, in and of itself, discharge a creditor's lien." *In re Kalabat*, 592 B.R. 134, 143 (Bankr. E.D. Mich. 2018) (quotation and alteration omitted). Rather it is "firmly established that a lien 'rides through' bankruptcy unaffected, unless the lien is disallowed or avoided." *Id.* (quoting *In re Willis*, 199 B.R. 153, 154 (Bankr. W.D. Ky. 1995)). Here, no liens on the Property were disallowed or avoided in the Debtor's prior bankruptcy cases, and the Chapter 7 Discharge did not void any such liens.

### C.    U.S. Bank's Attorneys' Fees

Last, the Debtor objects to U.S. Bank's attorneys' fees included in the POC. (*See* June 22 Submission.) As stated, U.S. Bank was awarded attorneys' fees and costs totaling $13,291.44 by the State Court. (Foreclosure Judgment at 7.) Pre-petition attorneys' fees awarded in a judgment of foreclosure are allowed claims in bankruptcy. *In re Forde*, 507 B.R. 509, 520-21 (Bankr. S.D.N.Y. 2014) ("Hillcrest is entitled to include all of its pre-petition state court attorneys' fees in its proof of claim as same were awarded by the state court pursuant to the Judgments of Foreclosure.").

Nonetheless, the amount of attorneys' fees and costs sought by U.S. Bank in its POC is $25,892.93, not $13,291.44 as was awarded under the Foreclosure Judgment. At the November 4, 2025 hearing, the Court asked U.S. Bank's counsel why the amount sought in the POC was higher than the amount awarded under the Foreclosure

---

[9]    It does not appear that these entities received notice of the Debtor's request.

10

Judgment. Counsel could not provide any justification for the discrepancy. Therefore, the POC must be reduced by $12,601.49 representing the difference between the attorneys' fees and costs awarded under the Foreclosure Judgment and such fees and costs sought in the POC.

## ORDER

For the reasons stated,

- U.S. Bank's POC is hereby REDUCED from $308,640.90 to $296,039.41;

- the Debtor's request to disallow the POC pursuant to FAPA is DENIED; and

- the Debtor's request to avoid non-Mortgage liens on the Property is DENIED.



**Dated: December 1, 2025**
**Poughkeepsie, New York**

/s/ Kyu Y. Paek
_____
**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**